UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELONG, INC.,<br><br>                 Plaintiff,<br><br>      v.<br><br>NATIONWIDE MUTUAL INSURANCE<br>COMPANY, et al.,<br><br>                Defendants. | Case No.  25-cv-01990-JCS<br><br>**ORDER DENYING MOTION TO<br>ENFORCE SETTLEMENT<br>AGREEMENT**<br><br>Re: Dkt. No. 54 |

## I.    INTRODUCTION

In this action, Plaintiff Belong, Inc. ("Belong") sued four insurers based on their denial of any defense or indemnity obligations in connection with a class action lawsuit brought against it under policies the Insurers issued to Belong.  On May 22, 2025, the parties notified the Court that they had "reached a resolution to resolve this action" and "request[ed] 45 days to file a Dismissal of the action pursuant to Rule 41 to allow them additional time to further document the settlement agreement."  Dkt. no. 36.  However, on June 12, 2025, Belong filed a request to withdraw the notice of settlement. Dkt. no. 38.  The instant motion relates to whether the parties entered into a binding settlement during their negotiations even though they were unable to agree on the terms of a written agreement and no written agreement was ever executed.

Presently before the Court is a Motion to Enforce Settlement ("Motion") brought by Scottsdale Indemnity Company ("Scottsdale Indemnity"); 2) Accelerant Specialty Insurance Company ("Accelerant"); 3) Sentinel Insurance Company Ltd. ("Sentinel"); and 4) Covington Specialty Insurance Company ("Covington") and RSUI Group. [1]  For the reasons stated below, the

---

[1]Although the First Amended Complaint, which is the operative complaint, also lists in the caption Scottsdale Insurance Company  and Nationwide Mutual Insurance Company ("Nationwide"), the

Motion is DENIED.[2]

## II.       BACKGROUND

### A.       Factual Background

Between April and June of 2025, counsel for the parties engaged in negotiations to settle this case. On May 7, 2025, attorney Marissa Sinha, counsel for Belong, discussed settlement in a telephone conversation with Jamison Narbaitz, counsel for Accelerant. Declaration of Marissa Nebenzahl Sinha in Support of Plaintiff's Opposition to Defendants' Motion to Enforce Settlement Agreement ("Sinha Decl.") ¶ 21. She followed up with an email to Mr. Narbeitz the same day, stating, in part:

> Belong has authorized me to restate its global settlement demand of $100,000[3] as to all defendants in exchange for a mutual release of claims and dismissal with prejudice. I  understand that you will communicate this global demand to all defendants. . . . Also, to avoid any potential future confusion, this demand will be withdrawn if not accepted in writing by all defendants by 5:00pm PT on Friday, 5/9/25.

*Id.*, Ex. 7 (unredacted); Declaration of Jamison Narbeitz in Support of Defendants' Joint Motion to Enforce Settlement Agreement ("Narbeitz Decl."), Ex. 2 (redacted).

On May 12, 2025, Ms. Sinha and Mr. Narbeitz again discussed settlement on the telephone.  Sinha Decl. ¶ 26. Ms. Sinha interpreted Mr. Narbaitz's statements during that conversation as "communicating Defendants' global offer to settle in the amount of $100,000" and she followed up with an email stating:

> I have confirmed with Belong that they agree to accept the $100,000.00 global settlement offer from all defendants that you extended by phone earlier today. Please respond with written confirmation that we have a settlement in this amount, conditioned on the execution of a mutual release of all claims. If so, we will draft and

parties stipulated at oral argument that these defendants were dismissed pursuant to their April 24, 2025 stipulation and that their inclusion in the caption of the First Amended Complaint was a clerical error.  Neither Nationwide nor Scottsdale Insurance Company is currently a party to this case.

[2] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

[3] Although the amount of the proposed settlement is confidential under the terms of the purported settlement agreement, the amount  is stated in the public record of this case on multiple occasions and the parties stipulated at oral argument that the Court therefore need not redact the amount from its Order.

United States District Court
Northern District of California

United States District Court
Northern District of California

circulate a release. Thank you.

Sinha Decl., Ex. 11. On the same day, Mr. Narbeitz responded in an email that stated, in part:

> For the sake of clarity, during our call this afternoon I said the defendants will accept the plaintiff's $100,000 demand assuming your client would extend that demand beyond the Friday, May 9 at 5pm deadline, since you and I did not connect on Friday following my voicemail to you earlier that day.
>
> I'm not sure it makes any difference practically, but as there are three other defendant insurers that I do not represent and there were strong views around moving from up the last global offer of $80,000, I don't want to inject any unnecessary controversy into this by labeling it as plaintiff's acceptance of the "$100,000.00 global
> settlement offer from all defendants" because the insurers have made no such offer. If it is your client's position that the $100k demand has expired and therefore cannot be accepted by the defendants, then we do not have a settlement.
>
> As we discussed by telephone this afternoon, kindly confirm whether your client is willing to extend the deadline
> for the defendants to accept the $100,000 demand – and of course, please let me know if you would like to discuss further.

*Id.*

Ms. Sinha responded to Mr. Narbeitz's email with an email on the same day extending Belong's settlement offer, stating: "Belong will extend the May 9 5:00 p.m. PST deadline to accept a $100K global settlement offer on the condition we have immediate, unequivocal written confirmation of settlement this evening." Sinha Decl., Ex. 13. That evening, Mr. Narbeitz sent the following email to Ms. Sinha, copying counsel for the other Defendants:

> Further to our call this afternoon and our subsequent emails, this email confirms that plaintiff has extended the time for defendants to accept plaintiff's global settlement demand of $100,000, and that each of the four defendant groups (as represented by separate counsel) agrees to accept and will pay a $25,000 contribution to the $100,000 settlement, subject to the execution of a mutual release including a confidentiality clause. Each defendant group will be responsible only for its own $25,000 contribution. Each party will bear its own fees and costs.
>
> As you know, I only represent defendant Accelerant in this matter and I am simply communicating the defendants' acceptance of the global demand as a courtesy, and in doing so I undertake no duties or obligations on behalf of the other defendants.
>
> I understand your office will prepare the proposed mutual release for the defendants' review, which we will look forward to receiving in due course. Kindly inform the court of the settlement in principle and

see that all dates and deadlines are taken off calendar.

Sinha Decl., Ex. 16; Narbeitz Decl., Ex. 1.

On Wednesday May 14, 2025, Ms. Sinha sent an email to Mr. Narbeitz, copying all defense counsel, informing them that she would be traveling for business but "plan[ned] to circulate a release by Friday or Monday at the latest." Sinha Decl., Ex. 16. Mr. Narbeitz acknowledge receipt of that email and further stated, "For the sake of clarity, we will assume that the Rule 26(f) initial conference set for next Tuesday will not go forward under the circumstances." *Id.* Ex. 17. Ms. Sinha responded on May 19, 2025, stating, "Yes – The call tomorrow morning at 9 a.m. is OFF calendar. I will circulate a Release shortly." *Id.*

On May 20, 2025, Ms. Sinha emailed a "DRAFT settlement agreement" to defense counsel and asked counsel to "advise of any desired edits, comments, or concerns as soon as possible." Sinha Decl., Exs. 18 (May 20 draft settlement agreement), 19 (May 20 cover email). The May 20 draft settlement agreement contained an integration clause that stated:

> This Settlement Agreement contains the entire agreement of the Parties with respect to the subject matter contained in it and supersedes any prior oral or written negotiations, representations, discussions, understandings, or warranties, express or implied, prior to the execution of this Settlement Agreement. This Settlement Agreement is intended to be a final memorialization of the entire agreement and understanding of the Parties with respect to all of the subject matter described herein.

Sinha Decl., Ex. 8 (May 20 draft settlement agreement), Section 7.1. It was set up for signature by all the parties and provided that the Settlement Agreement would be "effective on the date it [was] signed by the last of the signatories identified [on the signature page]." *Id.*, Section 12.

On May 22, 2025, Ms. Sinha circulated a proposed "Notice of Settlement of Entire Case" for approval. Sinha Decl., Ex. 20. The Notice stated:

> The Parties, through counsel, file this Notice of Settlement to inform the court that they have reached a resolution to resolve this action. The parties request 45 days to file a Dismissal of the action pursuant to Rule 41 to allow them additional time to further document the settlement agreement.

*Id.* All parties agreed to the proposed notice, which was filed on the same date. Sinha Decl. ¶¶ 35-36 & Ex. 21. Also on May 22, 2025, counsel for RSUI/Covington requested edits to the

4

May 20 draft settlement agreement to clarify payment instructions and to include "reinsurers" as released parties. Sinha Decl. ¶ 37 & Ex. 22. Shannon Santos, counsel for Sentinel, advised that she was waiting for Sentinel's approval of her office's proposed revisions to the settlement agreement and would circulate the revisions once approved. Sinha Decl., Ex. 23. Ms. Santos also requested that Ms. Sinha circulate the W9 and payee information "ASAP so the insurers [could] begin processing settlement payments." *Id.* Ms. Sinha did so the same day and again requested that Defendants' counsel either provide their proposed changes or confirm they had no changes to the draft settlement agreement "at [their] earliest." *Id.* ¶ 39.

On May 27, 2025, Ms. Sinha circulated another draft that incorporated RSUI/Covington's proposed changes (clarification re payment methods and addition of reinsurers in the release), which were the only proposed revisions Ms. Sinha had received at that point. Sinha Decl., ¶ 40 & Exs. 25 (cover email), 26 (May 27 draft settlement agreement). Sentinel had not yet provided any proposed revisions to the May 20 draft settlement agreement. Sinha Decl., ¶ 40. In the cover email to which the May 27 draft settlement agreement was attached, Ms. Sinha asked defense counsel to "[p]lease circulate any other proposed revisions by end of day Thursday 5/29" so that the final version could be executed on May 30, 2025. Sinha Decl. ¶ 25.

The next day, Sentinel's attorney, Shannon Santos informed Ms. Sinha that Sentinel would have "significant revisions" to the proposed agreement and that those revisions would be circulated once Sentinel approved them. Sinha Decl., Ex. 27. Ms. Sinha responded:

> I can't imagine what those "significant revisions" may be given the boilerplate nature of the draft settlement agreement we circulated. Please circulate ASAP so we may determine whether it will be possible to resolve Sentinel's purported concerns. If not, we may need to revisit resolution. Thanks

*Id.*, Ex. 28. Mr. Narbeitz sent an email the same day stating that Accelerant would have "a handful of relatively minor changes" but "reserved the right to make any further changes (including based upon changes proposed by other parties)." *Id.* Ex. 29. Also on May 28, 2025, Scottsdale's counsel sent proposed revisions to the settlement agreement, including adding Nationwide as a party to the agreement and making revisions to the release. *Id.* Exs. 32-33. The next day, Mr. Narbeitz circulated additional revisions, noting that he was still awaiting approval from the client

United States District Court
Northern District of California

United States District Court
Northern District of California

for the proposed revisions. *Id.* Ex. 35.

On May 30, 2025, Ms. Sinha responded to the proposed changes to date, stating that she had "accepted all redlines EXCEPT:  Payment due date of fourteen (14) days from last signature. Any insurers requesting checks have had plenty of time to do so, payment can be made by wire transfer if necessary, and dismissal is due within 45 days of notice of settlement." *Id.* Ex. 41.  She also edited the draft to "[make] the language for all release paragraphs the same" and to "add[ ] back in the option to pay via check or wire transfer." *Id.*  She asked defense counsel to "[p]lease execute and return upon receipt so that payment can be remitted and we can close this out ASAP." *Id.*

Mr. Narbeitz responded that Accelerant would need 30 days from the effective date for settlement funding as the funds could not be "be requested / processed until the settlement agreement is finalized." *Id.*   He also noted, "I believe some of the other insurers may still have proposed changes[,]" apparently referencing Sentinel's revisions, which had not yet been circulated. *Id*. Ms. Sinha responded by stating:

> In the approximately 15 years that I practiced insurance defense ordering the check before the settlement agreement was signed was never an issue. This delay is continuing to cause my client to incur unnecessary fees. Fourteen days is more than sufficient time to remit payment. Absent receipt of Sentinel's revisions by end of day Wednesday 6/4, and a final, fully executed agreement by end of day Friday 6/6, we will ask the court withdraw the notice of settlement and reset the status conference.

*Id.*  In his response, Mr. Narbeitz reiterated that his clients had "advised that they will need 30 days to fund the settlement." *Id.*  Ex. 42.  He also asserted that the time defense counsel were taking to consider the draft agreement was reasonable, noting that "it took [Ms. Sinha] 8 days to even provide a draft of this 'boilerplate' (to use [her] words from [her] May 28 email) settlement agreement after receiving the insurers confirmation of the settlement on May 12." *Id.* He advised Plaintiff's counsel that "[i]f [Belong is] incurring additional fees, I would suggest you stop sending emails until all four defendants have had a chance to vet this and propose their changes." *Id.*

On June 3, 2025, Sentinel's counsel circulated a version of the proposed settlement

United States District Court
Northern District of California

agreement that included Sentinel's revisions, stating in the cover email that all defendants agreed to the draft. *Id.* Exs. 43 (cover email), 44 (June 3 draft settlement agreement). Among other things, the June 3 draft settlement agreement added a waiver of California Civil Code section 1542 in the release and added signature lines for counsel, binding them to the confidentiality requirements of the settlement agreement. *Id.* Ex. 44. It also added a provision stating:

> This Agreement shall be without precedential value, and it is not intended to be, nor shall it be construed as, an interpretation of the Insurers' policies issued to Belong or "Belong Home, Inc." or any other insurance policy.

*Id.* Section 7. In addition, it added the following notice requirement:

> In the event that a Party is served with any subpoena, order, or process seeking disclosure of this Settlement Agreement, testimony relating to its contents, or the negotiations leading thereto, that Party shall promptly give written notice to the other Parties at least 30 days prior to the disclosure, or the earliest practicable notice under the circumstances if disclosure is required to be made within 30 days, setting forth verbatim all information that it proposes to disclose, the identity of each person to whom the information is to be disclosed, the confidentiality agreement governing such disclosure, and the circumstances pursuant to which the disclosure is proposed to be made as well as a copy of the requesting document. Upon receipt of proper notice, any other Party may object to the requested disclosure on the ground of confidentiality or otherwise.

*Id.* Section 6.

On June 4, 2025, Accelerant "pulled coverage" from Belong in a separate action in which it had been defending Belong on a reservation of rights. *Id.* ¶ 56.

On June 5, 2025, Ms. Sinha responded to Defendant's June 3, 2025 email and proposed draft, stating:

> Counsel:
>
> Plaintiff does not accept these revisions.
>
> In particular, plaintiff does not agree to the following:
>
> The scope of the proposed release exceeds known and unknown claims arising from this specific lawsuit;
>
> The "precedential" clause;

> The subpoena notification clause; and
>
> We would add a prevailing party attorneys' fees clause for enforcement.
>
> Further, the firm will not be executing and binding itself to the agreement.
>
> Let me know now if these are deal breakers. If so, we will ask the court to reset the case management deadlines.

*Id.* Ex. 45.

On June 11, 2025, Sentinel's counsel sent an email to Ms. Sinha stating that she had conveyed Belong's position to her client and would let Ms. Sinha know when she had received a response. *Id.* Ex. 46.

On June 12, 2025, Ms. Sinha filed a Request to Withdraw Notice of Settlement and Reset Status Conference. Dkt. no. 38. In her Opposition declaration, Ms. Sinha offers the following reasons for filing the request:

> At this point, we were well past the stated deadline of June 6, 2025 by which I had advised Defendants we would need to have a consummated settlement agreement[;] [as to] at least two of Belong's insurers, Accelerant and Sentinel, there were no obvious avenues in sight to reach any agreement, and Belong had now been incurring months of additional fees dealing with this. Moreover, it was becoming more and more evident that there was a serious potential that at least some of the Defendants were engaging in a pattern and practice of wrongful conduct towards Belong, which claims and evidence would be significantly jeopardized by entering into a settlement agreement with Defendants with, among other things, confidentiality and release scopes as proposed by Defendants.

Sinha Decl. ¶ 59.

On the same day, Ms. Santos (counsel for Sentinel) sent the following email to Ms. Sinha:

> Ms. Sinha,
>
> Your decision to file the Notice of Settlement while the parties were actively finalizing the settlement agreement is both disappointing and consistent with your handling of these discussions. I was already in the process of responding to your requested changes when you filed the document.
>
> With respect to your request for alterations to the agreement, Sentinel responds as follows:
>
> 1. The scope of the proposed release exceeds known and unknown claims arising from this specific lawsuit – The 1542 waiver is

8

standard language, and Section 5 is limited to known or unknown claims "within the scope of the subject matter set forth above." Please provide the plaintiff's proposed revisions to Section 5 for our review.

2.  The "precedential" clause -- Sentinel will agree to eliminate Section 7 from the agreement as the settlement agreement already states it is a compromised dismissal and not a determination under the subject policies.

3.  The subpoena notification clause – Assuming this refers to the second full paragraph of Section 6, please advise what revisions the plaintiff proposes if there is a request for release of the agreement.

4.  We would add a prevailing party attorneys' fees clause for enforcement. – Please provide the plaintiff's proposed language for consideration and where you propose to include it in the agreement.

Further, the firm will not be executing and binding itself to the agreement. – The attorney signatures section does not state it binds the attorneys. Rather, it only states the law firms agree to maintain the confidentiality of the agreement. As your firm has already agreed to do so through these negotiations, Sentinel will agree to remove the attorney signatures from the agreement.

Sinha Decl., Ex. 53 (red font in original).

On June 16, 2025, having received no response from Ms. Sinha, Ms. Santos circulated a draft settlement agreement. *Id.* Ex. 54 (June 16, 2025 draft settlement agreement). This version, which was sent on behalf of all Defendants, incorporated most of Defendants' proposed changes from the June 12, 2025 version; however, it removed the "precedential value" provision and the attorney signature lines, and added a provision awarding attorneys' fees to the prevailing party in an enforcement action. *Id.*; Narbeitz Decl. ¶ 9. Ms. Sinha responded on June 25, 2025, stating, in part, that Belong had "become aware of additional concerns pertaining to Accelerant's and Sentinel's handling of subsequent tenders made by Belong" and that "[t]hese concerns render[ed] a global settlement on the currently proposed terms impossible." Narbeitz Decl., Ex. 7. Ms. Sinha continued:

Our concerns include Accelerant's handling of and withdrawal of coverage in the Monica Cooper lawsuit, the circumstances of Accelerant's policy cancellation, and Sentinel's declination of coverage for the Searock claim. We will amend the complaint in this lawsuit accordingly as necessary.

In the current lawsuit, the latest version of the proposed settlement

9

agreement circulated by defendants includes language proposed by Accelerant that infinitely enlarges the scope of released claims. It also includes Sentinel's proposed 1542 waiver of claims "within the scope" of this subject matter that likewise seeks the release of an infinite scope of known and unknown claims. Belong cannot agree to these enlarged release terms as they would encompass a release of its rights and remedies related to the Cooper and Searock claims. The settlement payment amount previously discussed did not include any negotiated consideration to release these claims.

Our client may be willing to consider a global settlement with increased contributions from Accelerant and Sentinel. An alternative could be language carving out and preserving Belong's rights and remedies related to subsequent claims.

*Id.*

On June 30, 2025, Mr. Narbeitz responded with an email in which he explained why he believed the language in the release, including the 1542 waiver, "could not possibly be understood to encompass" claims arising out of tenders other than the Gupta action but he nonetheless agreed to add specific language carving out the Cooper matter. Narbeitz Decl., Ex. 8. Likewise, in a July 8, 2025 email, Ms. Santos confirmed that the release did not encompass the Searock matter but invited Plaintiff's counsel to propose language confirming that position if it deemed such language necessary. *Id.* Ex. 9. On July 15, 2025, Ms. Santos emailed Ms. Sinha asking for a response, *id.*, Ex. 10, and on July 23, 2025, Ms. Sinha sent a response stating that her client was "no longer amenable to settlement on these terms." *Id.* Ex. 11.

In the meantime, between June 12, 2025 and June 18, 2025, Ms. Sinha and counsel for Scottsdale discussed the possibility of entering into a separate settlement but on June 18, 2025, Scottsdale's counsel informed Ms. Sinha that it had decided not to enter into a separate settlement due to the danger that Scottsdale would "be brought back into the litigation and having to defend contribution claims anyway." Sinha Decl. ¶ 68.

On June 30, 2025, Sentinel affirmed its previous denial of coverage as to another pending claim filed by Belong that it had initially denied in April 2024. Sinha Decl. ¶ 57.

In the course of briefing the Motion, Belong's counsel learned that Scottsdale sent a check for $25,000 to Belong's "bank lockbox" on May 29, 2025. Sinha Decl. ¶ 71. Counsel for Nationwide, Emil Soskin, states that he had this check issued on behalf of Scottsdale "[i]n furtherance of the settlement that was reached by the Parties on May 12, 2025[,]" and had it sent to

United States District Court
Northern District of California

Belong on May 29, 2025.    Declaration of Emil Soskin in Support of Defendants' Reply Memorandum in Support of Motion to Enforce Settlement Agreement ("Soskin Reply Decl.") ¶ 3. Soskin further states that the check was cashed by Belong on June 4, 2025 and that Belong never returned the money to Scottsdale.  *Id.*  ¶¶ 4-5[4].

### B.    The Motion

In the Motion, Defendants contend the parties entered into an enforceable settlement agreement on May 12, 2025, when Defendants accepted Belong's settlement offer.  Motion at 2, 7-10.  At that point, according to Defendants, "the Parties agreed to all material terms of the settlement: the amount, a mutual release of the claims brought herein, and dismissal with prejudice."  *Id.* at 2.  According to Defendants, the Court should enforce the settlement agreement, as set forth in the June 16, 2025 draft settlement agreement, pursuant to California Civ. Proc. Code section 664.6.  *Id.* at 10-12.  Alternatively, Defendants assert, the Court should exercise its inherent authority to enforce the settlement agreement under federal common law.  *Id.*  at 12-13.

Belong argues that there was no agreement because "Defendants and their counsel knew that any settlement was expressly contingent on all parties negotiating and executing a comprehensive, written settlement agreement and mutual release[,]" which "never happened." Opposition at 1. Furthermore, Belong asserts, Defendants' May 12, 2025 acceptance of the settlement amount included additional conditions and was, therefore, a counteroffer and did not give rise to a binding contract.  *Id.*  at 2.  Moreover, Belong argues, "all the communications made clear that there were conditions precedent to the formation of any contract, such as agreement on mutual release language, and an executed written contract, signed by the parties themselves, as exists in Defendants' June 16 Draft [Settlement Agreement], as well as every other draft the parties exchanged."  *Id.*  at 2-3. Belong also asserts that there is "a total disconnect between the defense attorneys and their clients[,]" citing the fact that "Scottsdale sent a $25,000 check, dated May 29, 2025 without reference to any signed agreement or communication with counsel for Belong."  *Id.* (citing Declaration of Owen Savir in Support of Opposition ("Savir Dec.") at ¶ 8,

---

[4] At oral argument, Belong's counsel conceded that Belong has not returned this money to Scottsdale.

United States District Court
Northern District of California

Exhibit A; Sinha Dec. ¶ 71).

Finally, Belong contends the Court should issue an order to show cause ("OSC") why sanctions should not be awarded against Defendants under the Court's inherent authority and 28 U.S.C. § 1927 on the grounds that Defendants misrepresented the record, "failed to correctly cite and apply long standing contract principles of offer and acceptance" and "harangued Plaintiff's counsel to have Belong execute a written settlement agreement." *Id.* at 21-22.

## III. ANALYSIS

### A. Legal Standards

Under federal law, "[i]t is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted). "However, the district court may enforce only *complete* settlement agreements." *Id.* (emphasis in original). Thus, to prevail on a motion to enforce a settlement, the moving party must show that the parties "have reached agreement on all material terms." *Id.* at 891. In addition, the moving party must establish that the parties intended to be bound by the agreement. *Id.* Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.[5] *Id.* at 890.

"State contract law governs disputes about the existence and enforceability of an agreement to settle a case." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990). Under California law, "a valid and enforceable contract is created by establishing the following: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient consideration." *Gamble v. Synchrony Bank*, No. EDCV191229JGBSPX, 2020 WL 12991563, at *2 (C.D. Cal. May 15, 2020) (citing Cal. Civ. Code § 1550; *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850

---

[5]The parties have provided extensive evidence related to their negotiations and the facts do not appear to be disputed, even if the parties draw different conclusions based on those facts. Therefore, the Court concludes that an evidentiary hearing is not required. Furthermore, at oral argument, Defendants stipulated that they do not seek an evidentiary hearing in relation to the instant Motion and Plaintiff's counsel stipulated that Belong did not seek an evidentiary hearing so long as the Court agreed with its position that the purported settlement agreement is unenforceable. Because the Court has found that the agreement was not enforceable, it concludes that any requirement that an evidentiary hearing be held in connection with the Motion has been waived.

United States District Court
Northern District of California

(1999)) (noting that a manifestation of mutual assent is required to form a valid contract).  While "[t]he modern trend of the law is to favor the enforcement of contracts, to lean against their unenforceability because of uncertainty, and to carry out the intentions of the parties if this can feasibly be done[,] . . . [i]t is well established . . . that where a party seeks specific performance of a contract, the terms of the contract must be complete and certain in all particulars essential to its enforcement."  *Magna Dev. Co. v. Reed*, 228 Cal. App. 2d 230, 235–36 (1964).

In addition to the inherent authority of a federal court to enforce a settlement agreement in a case that is before it, discussed above, federal courts sitting in diversity in cases governed by California's substantive law may also enforce a settlement under California Code of Civil Procedure Section 664.6, which courts have found is a provision of state substantive law and therefore applicable under the *Erie* doctrine.  *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 U.S. Dist. LEXIS 190903, *8 (N.D. Cal. Nov. 7, 2018); *McMillion v. Rash Curtis & Assocs.*, No.16-cv-3396 YGR, 2017 U.S. Dist. LEXIS 59246, *6 (N.D. Cal. April 17, 2017) ("This Court . . . finds that Section 664.6 is substantive state law because the settlement of a lawsuit is a decision to end the litigation, and implicates substantial rights of the litigants.").

California Code of Civil Procedure Section 664.6 provides in relevant part:

> (a) If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. . . .
>
> (b) For purposes of this section, a writing is signed by a party if it is signed by any of the following:
>
> (1) The party.
>
> (2) An attorney who represents the party.

Cal. Civ. Proc. Code § 664.6.  Section 664.6 imposes "two key prerequisites" to enforcement: 1) "there must be contract formation[,]" meaning "[t]he litigants must first agree to the material terms of a settlement contract before a judgment can be entered 'pursuant to the terms of the settlement[;]'" and 2)  "there must be a 'writing signed by the parties' that contains the material terms."  *Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 797 (1998).

Section 664.6 "creates an alternative procedure for the enforcement of certain settlement

13

agreements, but does not replace other means of enforcing a settlement contract." *Walter v. Western Indus.*, No. SACV 13-1503-JLS, 2015 U.S. Dist. LEXIS 196786, *7 (C.D. Cal. Mar.25, 2015) (citing *Levy v. Superior Court*, 10 Cal. 4th 578, 586 n. 5(1995) ("We note that this statutory procedure is not the exclusive means to enforce a settlement."); *Kilpatrick v. Beebe*, 219 Cal. App. 3d 1527, 1529 (1990) ("Nothing in the language of section 664.6 suggests it was intended to be exclusive. Rather, it appears to do nothing more than provide a streamlined method for reducing a stipulated settlement to judgment."); *see also United States ex rel. McCaffery v. Alt. Learning Ctr.*, No. 2:12-cv-01156-KJM-DB, 2020 U.S. Dist. LEXIS 52040, *5, n. 1 (E.D. Cal. Mar. 24, 2020) ("California law provides an alternative procedure allowing parties to pending litigation to move for an entry of judgment pursuant to the terms of a writing signed by the parties."). Thus, in *Walter*, which was a diversity case in which the plaintiff asserted exclusively California state law claims, the court found that it had the power to enforce a settlement agreement under federal common law in even though there was no "writing" under Section 664.6. 2015 U.S. Dist. LEXIS 196786 at *7.

### B.  Discussion

#### 1.  Whether there is an enforceable agreement

Based on the principles discussed above, the Court finds that it has the authority to enforce the purported settlement agreement in this case under either federal common law or Section 664.6 but that neither warrant enforcement of the agreement under the facts of this case.[6]

As discussed above, Section 664.6 allows for the enforcement of a settlement agreement where the court finds that: 1) the parties formed a contract by agreeing to the material terms of the settlement; and 2) there is a writing signed by the parties containing the material terms. With respect to the writing requirement, Defendants have pointed to case authority that supports the

---

[6] Plaintiff argues that under the *Erie* doctrine, Section 664.6 does not apply in this case because it is a procedural provision of law rather than a substantive one. Opposition at 14-15 (citing *Boosalis Options, LP v. Farnbacher Loles Motorsports, LLC*, No. C 09-80316 WHA, 2010 WL 335651, at *1 (N.D. Cal. Jan. 22, 2010) (holding that "confession of judgment" device is not authorized under the Federal Rules of Civil Procedure). The single case Plaintiff cites does not address that question and Plaintiff does not address the cases in which federal courts have reached the opposite conclusion, cited above.

14

conclusion that signatures contained in emails may be sufficient to satisfy the writing requirement under Section 664.6. *See, e.g., Walczak v. Abbey*, No. 37-2022-00013705-CU-OE-CTL, 2023 Cal. Super. LEXIS 79151 (Cal. Sup. Ct. Sept. 29, 2023), *5 (finding that settlement agreement was enforceable under Section 664.6 based on email responses by all parties' counsel accepting mediator's settlement proposal because mediator's email contained a list of terms and emailed responses signed by counsel met the requirements of California Civil Code section 1633.7, governing the use of electronic signatures).[7] Here, however, only Mr. Narbeitz signed the response accepting the offer in Belong's May 12 email. As Mr. Narbeitz represents only Accelerant, that email cannot satisfy the writing requirement as to the remaining defendants even if Mr. Narbeitz conveyed their acceptance of the agreement to Belong's counsel. *See* Narbeitz Decl., Ex. 1 (May 12, 2025 email from Mr. Narbeitz to Ms. Sinha stating, in part, "As you know, I only represent defendant Accelerant in this matter and I am simply communicating the defendants' acceptance of the global demand as a courtesy, and in doing so I undertake no duties or obligations on behalf of the other defendants.").

Defendants attempt to avoid this problem by pointing to the signatures of counsel on the Notice of Settlement, but they point to no communications by any counsel other than Mr. Narbeitz directly accepting Belong's email offer, sent by Ms. Sinha on May 12, 2025. *See* Motion at 11. [8]

_____

[7] Plaintiff objects to Defendants' citation to this case "for its purported interpretation of the requirements of section 664.6." asserting that "citation of such a case is forbidden" under California Rule of Court 8.1115(a). Opposition at 21. Belong further states, in a footnote, that "[t]his order is not published on Westlaw and Plaintiff's firm does not have a Lexis subscription." *Id.* n. 3. In fact, "[a]lthough the California Rules of Court would prohibit the citation of this unpublished decision in a state court, those rules do not apply in federal courts, which may review and consider unpublished appellate decisions for their persuasive (but not precedential) value." *United States v. Garcia*, No. 2:19-CR-00179-KJM, 2022 WL 256471, at *2 (E.D. Cal. Jan. 27, 2022) (citations omitted); *see also Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 405 (C.D. Cal. 2016) ("[a]lthough California Rules of Court, [R]ule 8.1115 prohibits citations to unpublished decisions, a federal court exercising diversity jurisdiction is not bound by a state's procedural rules.") *Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 405 (C.D. Cal. 2016) (internal quotations and citation omitted).

[8] In support of their argument that the agreement is enforceable under Section 664.6, Defendants state in the Motion:

> Ms. Sinha restated Belong's demand, provided a deadline by which Defendants needed to respond, and included her signature below the demand. Accelerant's counsel accepted on behalf of all Defendants and included his signature block below. All parties further assented to the terms of the settlement proposed by Belong when their respective attorneys sent

15

The Court finds no authority that suggests that email signatures agreeing to the filing of a separate document that does *not* list any of the agreement's terms are sufficient to meet the writing requirement of Section 664.6. To the contrary, in *J.B.B. Inv. Partners, Ltd. v. Fair*, the court made clear that under Section 664.6, "[t]he evidence must . . . demonstrate that the person printing his or her name intended to execute" the settlement agreement. 232 Cal. App. 4th 974, 992 (2014), as modified (Dec. 30, 2014). Agreement to the filing of a notice of settlement – or a signature on the notice itself -- does not establish such an intent, particularly in light of the odd phrasing of the notice, which stated that the parties had "reached a resolution to resolve" the case. Dkt. no. 36. Therefore, the Court concludes that Defendants have not demonstrated that the writing requirement of Section 664.6 has been satisfied.

Even assuming the writing requirement was met, however, the Court finds that Defendants have not satisfied the second requirement under Section 664.6, that the parties formed a contract by agreeing to the material terms of the settlement. For the same reason, the Court concludes that enforcement of the parties' agreement under federal common law is not warranted.[9]

First, while the evidence is mixed, it is not sufficient to establish that all parties intended to be bound by the agreement stated in the May 12 communications between Ms. Sinha and Mr. Narbeitz. On the one hand, all parties agreed to file a notice of dismissal following the email exchanges between May 12, 2025 and May 22, 2025 and to cancel the Rule 26(f) conference; Scottsdale even issued a check for its share of the settlement, which Belong not only cashed but has kept despite now eschewing the existence of a binding settlement agreement. On the other hand, the record reflects that the parties' agreement to the $100,000 settlement was contingent on execution of the written release. This was stated explicitly in at least one of the May 12 emails by Ms. Sinha. *See* Sinha Decl., Ex. 11 (May 12, 2025 email from Ms. Sinha stating, "Please respond

---

emails confirming their acceptance of the same and signing (or authorizing their signature) on the Notice of Settlement. (ECF No. 36.)

Motion at 11.
[9] Whether applying federal common law or Section 664.6, this issue is governed by principles of California contract law and therefore, the inquiry is the same, as the parties stipulated at oral argument.

16

United States District Court
Northern District of California

United States District Court
Northern District of California

with written confirmation that we have a settlement in this amount, *conditioned on the execution of a mutual release of all claims*.") (emphasis added).  Likewise, Mr. Narbeitz stated in his acceptance email on the same date "that each of the four defendant groups (as represented by separate counsel) agree[d] to accept and will pay a $25,000 contribution to the $100,000 settlement, *subject to the execution of a mutual release including a confidentiality clause*."  Sinha Decl., Ex. 16; Narbeitz Decl., Ex. 1 (emphasis added).

Furthermore, all of the draft agreements circulated by the parties were labeled as "draft" and stated that the agreement would go into effect only once it had been executed by the parties. *See Callie v. Near*, 829 F.2d at 891 (finding that district court erred in enforcing settlement agreement without  an evidentiary hearing where the appellant alleged that the parties intended to be bound only upon the execution of a written, signed agreement and that this intent was set forth in the correspondence between the parties);  *see also Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 324 (2d Cir. 1997) (provision in draft agreement specifying that agreement would go into effect once it was executed indicated that "parties did not intend to bind themselves until the settlement had been signed").  None of the subsequent emails from defense counsel suggests that any of the defendants' counsel intended to bind their clients to any settlement agreement *prior* to obtaining the approval of their clients to a final version of the settlement agreement and executing that agreement.  The fact that no defense counsel other than Narbeitz sent an email to Ms. Sinha directly accepting the May 12 settlement offer lends further support to the conclusion that all counsel understood that their agreement would not be binding until the written release was drafted and signed by the parties.

The record of the parties' negotiations also reflects that their agreement did not encompass all of the material provisions of the settlement.  First, the parties did not discuss whether Nationwide, which had been dismissed from the action at the time of the parties' negotiations, would be a party to the settlement agreement.  Moreover, the drafts exchanged by the parties suggest the parties did not see eye-to-eye on this, with Belong's initial drafts including no signature line for Nationwide and Scottsdale subsequently adding Nationwide in its proposed edits. While Belong did not object to the addition of Nationwide as a party to the agreement, this

17

question had not been addressed or decided as of May 12, 2025, when Defendants contend the parties entered into a binding agreement. Given that Nationwide apparently owns and operates Scottsdale Indemnity, *see* FAC ¶¶ 2-3, the question of whether it would be bound by the settlement agreement is undoubtedly material and thus, the absence of any explicit agreement on this question in the May 12, 2025 communications supports the conclusion that as of that date, the parties had not entered into a complete agreement.

Second, while the email exchange on May 12, 2025 included an agreement that the settlement payments would be made in exchange for a release, the communications did not address the *scope* of the release and the parties' subsequent communications and proposed edits indicate that there were significant disagreements on that issue, including on the question of whether the release would include a waiver of rights under California Civil Code 1542, governing the release of unknown claims. On similar facts, the court in *McMillion v. Rash Curtis & Associates*, No. 4:16-cv-3396 YGR, 2017 U.S. Dist. LEXIS 59246 (N.D. Cal. April 18, 2017) found that the parties' agreement was unenforceable.

In *MacMillan*, "[a]fter several rounds of back-and-forth negotiation on the settlement amount, plaintiffs' counsel e-mailed defense counsel on January 3, 2017, indicating that 'the deal remains $60k with monthly payments. Please confer with your client and let me know if we have a deal.' . . . Defense counsel responded on January 13: 'we have a deal on the 60k with payment. I'll prepare an agreement.' . . . On January 26, defense counsel e-mailed plaintiffs' counsel the purported settlement agreement, which he referred to as a 'draft settlement agreement.' . . . In this same e-mail, defense counsel asked plaintiffs' counsel to 'please let me know if it is approved.'" *Id.* at *2-3.

The court in *MacMillan* found that these communications did not give rise to an enforceable agreement because, among other things, the parties had not discussed the release and one of the parties specifically sought a waiver under Section 1542. *Id.* at 4. The court stated:

> Although materiality is a fact-specific inquiry, federal courts have noted "[t]here is no doubt that release provisions are generally thought to be material terms of any settlement agreement." *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1125 (C.D. Cal. 2002), aff'd, 64 F. App'x 241 (Fed. Cir. 2003); *Doi v. Halekulani Corp.*, 276 F.3d 1131,

18

1138 (9th Cir.2002) (referencing release as among the material terms of a settlement agreement).

Here, . . . the record lacks any showing that the parties negotiated or discussed a provision for mutual release of claims. . . .

[Further], one of defendant's e-mails indicates that it specifically sought a waiver of plaintiffs' rights under California Civil Code Section 1542. . . Indeed, the draft settlement agreement circulated by the defendant includes such a waiver. . . . *A Section 1542 waiver is unquestionably material to the purported settlement agreement*, especially given the defendant's early insistence on such a waiver. Yet there exists nothing in the record to show that plaintiffs agreed to waive their Section 1542 rights.

*Id.* at \*4-5 (emphasis added).

Finally, the communications that purportedly gave rise to an enforceable agreement did not include payment terms and the parties' subsequent negotiations reflect that the parties never saw eye-to-eye on whether the settlement payments would be made within 14 days or 30 days. *See J.B.B. Inv. Partners Ltd. v. Fair*, 37 Cal. App. 5th 1, 13 (2019), as modified (July 1, 2019) (finding that there was an enforceable agreement based on offer email that "included specific terms (settlement amount, *payment deadline*, release of claims, etc.) delineated in 10 separately numbered paragraphs, which expressly invited defendants' acceptance.") (emphasis added).

The Court further finds that the cases upon which Defendants rely to establish that a binding agreement was formed are distinguishable on the facts. For example, in *Gamble v. Synchrony Bank*, the court found that there was an enforceable settlement agreement where counsel for the only two parties in the case exchanged a series of emails with offers and counteroffers, culminating in an agreement that explicitly encompassed not only the monetary amount of the settlement but also the numerous specific non-monetary terms that had been listed in the parties' email exchange. No. EDCV191229JGBSPX, 2020 WL 12991563, at \*3 (C.D. Cal. May 15, 2020).

Likewise, in *Rosen v. Urb. Commons, LLC*, the terms of the settlement agreement were already set forth in a draft agreement when the parties agreed to file a notice of settlement and that notice expressly stated that the parties had "reached a settlement as to all claims and issues between all parties inclusive of a stipulated judgment, payment terms, and all other required language to ensure finality and enforceability of the final settlement, including language asking

United States District Court
Northern District of California

19

this Court to retain jurisdiction to enforce the agreement." *Rosen v. Urb. Commons, LLC*, No. 8:20-cv-01973-JLS-DFM, 2023 U.S. Dist. LEXIS 83204, *5 (C.D. Cal. May 10, 2023). Furthermore, the court found that while the parties themselves had not executed that agreement, all counsel had agreed to the terms in their email communications and there was no evidence that the parties had not authorized counsel to enter into an agreement on their behalf. *Id.* at *8.

Here, in contrast to the facts of *Rosen*, the settlement agreement had not been reduced to writing when the parties purportedly agreed to it and the email communications that Defendants contend give rise to an enforceable agreement did not address all material terms of the agreement, as discussed above. Moreover, Belong has offered evidence that it did *not* authorize counsel to enter into an agreement absent a written settlement agreement that it had approved. *See* Declaration of Owen Savir in Support of Plaintiff's Opposition to Defendants' Motion to Enforce Settlement Agreement ("Savir Decl.") ¶ 4 (sworn statement by Belong's president that "Regarding this case, [he] authorized Ms.Sinha in May 2025 to indicate that the monetary term of a final written settlement agreement which Belong would accept at that time, subject to any agreed upon written terms and my execution of a written settlement agreement, was $100,000").

There is no doubt that under California law, "a settlement agreement need not be signed, or even reduced to writing, to be enforceable." *Rosen*, 2023 U.S. Dist. LEXIS 83204, *11 (citations omitted). Nonetheless, where, as here, the communications are not sufficiently complete to encompass all of the material terms of the agreement, there is no binding settlement agreement.

### 2. Whether the Court should issue an OSC re sanctions

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Federal courts also have inherent authority to award attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotations and citations omitted). Plaintiff asks the Court to issue an OSC why it should not exercise this authority to award sanctions against Defendants on the grounds that Defendants

20

"failed to accurately summarize the record," "failed to correctly cite and apply long standing contract principles of offer and acceptance" and "ignored the necessity of establishing all the *parties'* objective mutual consent to the terms of any contract, including a settlement agreement." Opposition at 22 (emphasis in original). Plaintiff also accuses Defendants of "harangu[ing]" Plaintiff's counsel to have Belong execute a written settlement agreement." *Id.* at 23.

As a preliminary matter, to the extent that Plaintiff seeks an award of attorneys' fees against Defendants as a sanction, the proper procedure for seeking such sanctions is set forth in Civil Local Rule 7-8, which provides that any request for sanctions requires a separately filed motion. Plaintiff's request in an Opposition brief for the Court to issue an order to show cause regarding the imposition of sanctions is therefore improper. In light of the acrimonious nature of some of the communications between counsel, however, the Court will address Belong's argument on the merits to make clear that the Court does not find that Defendants' counsel have engaged in any improper conduct.

First, the Court has carefully reviewed the evidence supplied by both sides in connection with the instant motion and does not find any inaccuracies or misrepresentations of the record by Defendants. The mere fact that Defendants did not include *all* of the email communications between counsel relating to their settlement efforts does not amount to "misrepresentation" of the record. Nor was it improper for Defendants to provide only the communications they understood to be relevant to the questions raised in the Motion. Plaintiff had the opportunity to submit any additional evidence it believed was necessary to provide a complete picture of the parties' negotiations and took advantage of that opportunity by submitting hundreds of pages of additional evidence, which the Court reviewed.

Second, the fact that Defendants' understanding of the relevant legal principles does not coincide with Plaintiff's reading of the law – or that Defendants reached different conclusions from Plaintiff as to how those principles apply to the facts of this case – does not warrant the imposition of sanctions. While the Court has rejected some of Defendants' conclusions (as well as many of Plaintiff's), the positions Defendants have taken in connection with the instant Motion are neither unreasonable nor vexatious. Furthermore, the Court's finding that the agreement was not

21

sufficiently definite to give rise to a binding contract is *not* a finding that Plaintiff acted in good faith with respect to the parties' settlement negotiations.

Finally, the Court finds no evidence that defense counsel's communications with Ms. Sinha amounted to "harangu[ing]" or that their communications with Plaintiff's counsel were anything but respectful and professional.

In sum, Belong's request for an award of sanctions has no merit.

## IV.    CONCLUSION

For the reasons stated above, the Motion is DENIED.  The parties shall meet and confer and submit a proposed schedule for the case by **May 28, 2026**. A Further Case Management Conference will be held by Zoom webinar on **September 16, 2026 at 2:00 p.m**.

**IT IS SO ORDERED.**

Dated:  May 14, 2026

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

22